UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80979-CIV-MARRA

**THE VICTORIA SELECT INSURANCE COMPANY,**
 **plaintiff,**

vs.

**VRCHOTA CORPORATION,**
**JOHN J. GIACOBBA, JR., and**
**MONICA KELLY, as Personal Representative of the**
**ESTATE OF MICHAEL KELLY,**
 **defendants.**
_____/

**MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**I. Preface**

This is a declaratory judgment action to resolve an insurance coverage dispute under a Florida business automobile policy ("the Policy") issued by the plaintiff, The Victoria Select Insurance Company ("Victoria" or "the insurer"), to Vrchota, Inc. ("Vrchota"or "the named insured"), a tow service operator based in Palm Beach County Florida. The case is before the court under its diversity jurisdiction pursuant to 28 U.S.C. § 1332.

The dispute arises from an automobile accident involving Michael Kelly ("Kelly" or "the decedent"), who was killed when a tire separated and exploded on the Vrchota tow truck he was driving, causing the truck to flip into a canal.

On June 12, 2009, the family of Michael Kelly sued Vrchota and one of its officers, John Giacobba, Jr., in state court for their alleged negligence in failing to maintain the tires on the truck involved in the accident properly. *Monica Kelly, as Personal Representative of the Estate of Michael Kelly v Vrchota Corp. et al.,* Palm Beach County Circuit Court, in the Fifteenth

Judicial Circuit in and for Palm Beach County Florida, Case No. 502009 CA 020483XXXXMB. As of the current date, that wrongful death action is still pending.

In this federal action, Victoria seeks a declaratory judgment that it does not owe a duty to defend or indemnify the defendants named in the underlying wrongful death suit under the business automobile policy which it issued to Vrchota.  Victoria's complaint identifies three policy exclusions as the premise for its argument: (1) the employee indemnification and employer's liability exclusion [Policy Exclusions, Section II.B.4.]; (2) the workers' compensation exclusion [Policy Exclusions, Section II.B.3.], and (3) the "Self" exclusion for "bodily injury to you or an Insured" [Policy Exclusions, Section II.B.15].

In its current motion for summary judgment [DE# 31], Victoria invokes only the latter "Self" exclusion for "bodily injury to you or an insured" as a basis for entry of judgment in its favor.  For the reasons discussed below, the court will deny the motion.

## II. Standard of Review

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex v Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986).  In deciding whether the moving party has satisfied its burden, the court draws all available inferences from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson v Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993).  If a reasonable

fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment. *Id.*

When the moving party meets its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. Rather, the nonmovant must identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial. *Baranowski v Hart*, 486 F.3d 112, 119 (5th Cir.), *cert. den*., 552 U.S. (2007). This burden will not be satisfied by "some metaphysical doubt" as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by a "mere scintilla" of evidence. *Earley v Champion International Corp*., 907 F.2d 1077, 1081 (11th Cir. 1990); *Boudreaux v Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Rather, the evidence must be such that a reasonable jury could return a verdict in favor of the non-moving party. *Walker v Darby*, 911 F.2d 1573 (11th Cir. 1990), citing *Anderson v Liberty Lobby, Inc*., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).

### III.  The Policy

The Victoria, under a business automobile liability insurance policy ("the Policy") issued March 17, 2007, agreed to insure Vrchota, a tow service operator, and also agreed to insure certain of Vrchota's designated drivers, including Michael Kelly, subject to the limits of liability, exclusions, conditions and other terms of the Policy.

Under "Item One" of the Policy declaration sheet, the Policy identifies "Vrchotta (sic) Inc." as the "named insured." Under "Item Two," it identifies a schedule of coverages and covered automobiles. At "Item Three," the declaration sheet incorporates a "driver schedule"

listing ten individual drivers by name, license number, date of birth and marital status, as well as a "schedule of covered autos," itemizing ten trucks by year, manufacturer, body, class and Vehicle Identification Number.   Michael Kelly is listed as Driver No. 13 in the driver schedule, and in the auto schedule he is  matched as the designated driver of Vehicle No. 1, a 2003 International Car Carrier (not the accident vehicle).   Darren Wells is listed as Driver No. 4 in the driver schedule, while in the auto schedule he is designated as the driver of Vehicle No. 10, the 1997 Peterbilt tow truck involved in the subject accident.

The  Policy contains the following insuring clause:

**<u>Section II - Liability Coverage</u>**

 A. **Coverage**

>We will pay all sums, an insured legally must  pay as damages, other than punitive or exemplary damages, because of bodily injury or property damage to which this insurance applies, caused by an accident  and resulting from the ownership, maintenance or use of a covered auto.

While the Policy declaration page specifically identifies Vrchota as the  "named insured," under the omnibus clause set forth at Section II.A.1.b.(3), the Policy  expands the definition of an  "Insured"  to include permissive users of covered autos, with certain exceptions.  In  relevant part, Section II.A.1. of the Policy, captioned "Who is an Insured," reads:

>**1.  WHO  IS AN INSURED**
>
>The following are insureds:
>
>a.  You for any covered auto.
>
>b.  Anyone else  while using with your permission a covered auto you own, hire or borrow, except:
> ....

        3)      Someone using a covered auto while he or she is working in a business of selling, servicing, repairing, parking or storing auto (sic) unless that business is yours.

It is undisputed that the Policy was in full force and effect on January 15, 2008, the day of the subject accident; that the tow truck operated by Kelly on that date was listed as vehicle No. 10 in the Policy's "Schedule of Covered Autos," and that Kelly was designated as a driver No. 13 in the Policy's "Driver Schedule."

At Section II. B., "Exclusions," the Policy sets forth the following relevant exclusions:

**B. EXCLUSIONS**
This insurance does not apply to any of the following:

....

**3. WORKERS' COMPENSATION**

Any obligation for which the insured or the insured's insurer, whether or not the insurer exists, may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY**

Bodily injury to:
a.    an employee of the insured arising out of and in the course of employment by the insured; or
b.    Performing the duties related to the conduct of the insured's business; or
c.    The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.
This exclusion applies:
    1) whether the insured may be liable as an employer or in any other capacity; and
    2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.
....

**15. SELF**
Bodily injury to you or an insured.

As stated in the Policy Agreement, throughout the Policy, the words "you" and "your" refer to the Named Insured shown in the Declaration page [Policy, Page 1].

### IV.  Facts

Vrchota President or Vice-President Kevin Piller,[1] testified that Vrchota hired Michael Kelly as a tow truck driver in December, 2007 under a verbal agreement allowing Kelly to collect a 25% commission on all income generated by tows he performed driving Vrchota trucks.  As Piller described it, the agreement was "bring us work and we'll pay commission..."[Piller Dep. 28:11-24], and the strict  25- 75% fee splitting compensation scheme applied to all assignments [Piller dep. 12:25-13:13, 14::4-21],  regardless of whether Kelly was working on a job assigned by Vrchota or one developed through his own independent contacts  [Piller Dep.14:4-21]. Kelly's financial arrangement with Vrchota was different from that of all other Vrchota drivers which were obtained through a staff leasing company [Piller Dep. 17:19- 19:9].

On the date of the accident, Piller  understood that Kelly was headed  to Florida's west coast on a  repossession assignment for one of Kelly's independent clients.  "These were his clients, not Vrchota's clients," [Piller Dep. 12:15-24; 14:11-13] [2] and the original 25/75 fee

---

[1] Kevin Piller testified that he was the Vice-President of Vrchota,  and that John Giacobba Jr. was President [Piller Dep. 19:7-9].
John Giacobba, Jr.  testified that he was the Treasurer of Vrchota; that he believed the Vice-President was Gerald Piller, and that he did not believe that  the corporation had a President [Giacobba Dep. 11-12].

[2] Victoria objects and moves to strike the portion of the Piller testimony which describes Kelly's intended destination and the origin of his  client assignment on the date of his death, contending that Piller's knowledge is based on what he "was informed," and therefore constitutes inadmissible hearsay.
The deposition testimony in question does not indicate the source of Piller's knowledge. Without this information, the court is unable to determine the competency and admissibility of

sharing arrangement applied.

On the day before the accident, the Florida Highway Patrol [FHP] inspected the Peterbilt in connection with Vrchota's application to operate as a police tow, and advised Vrchota that both front tires needed replacement before the vehicle could be approved for FHP towing. [Giacobba Dep.: 44-47].

The undisputed deposition testimony of Kevin Piller, currently before the court without objection, is that Michael Kelly did not have Vrchota's permission to drive the 1997 Peterbilt tow truck on the date of his fatal accident:[3]

> He [Kelly] was supposed to take another vehicle, a land doll [sic] which is capable of carrying a pickup truck and a motorcycle..... It was staged for him to take that vehicle... .It was parked – he parked it in front of the building and had it ready to leave in the morning.

[Piller Dep. 25: 17-25; 26: 1-6].

Piller was unaware as to what might have prompted Kelly to take the Peterbilt truck, but was emphatic that he did not have permission to do so:

---

Piller's testimony in this regard. However, because this testimony is not germane to the threshold "permissive user" issue which the court ultimately concludes creates an issue of fact for the jury, as discussed *infra*, the court shall deny Victoria's motion to strike this portion of the Piller testimony as moot.

[3]Vrchota Treasurer John Giacobba, Jr. similarly testified that Kelly "wasn't supposed to be driving" the Peterbilt truck on this particular run. [Giacobba Dep. 17:15-20]. Victoria objects and moves to strike the testimony of Giacobba on the permissive use issue contending it is not based on Giacobba's personal knowledge and therefore constitutes impermissible hearsay.
However, since Piller's testimony to the same effect is currently before the court without objection, it is unnecessary to resolve this evidentiary issue at this juncture. Victoria's motion to strike the corresponding deposition testimony of Giacobba is accordingly denied as moot.

> Q. Do you have any idea why he took the rotator [i.e. Peterbilt truck] instead of –
>
> A. Absolutely not.
>
> Q. He was not permitted to take the rotator, correct?
>
> A. Correct.

[Piller Dep.26:7-12]

> Q. And your testimony here today is that Michael Kelly did not have the permission of Vrchota to operate the 1997 Peterbilt rotator truck on the day of this accident?
>
> A. Yes.

[Piller Dep. 33:14-18].

On the other hand, Piller also stated that he did not report the Peterbilt as stolen to law enforcement [Piller Dep. 39:11-18], and knew of no reason why Vrchota would have refused Kelly permission to use the Peterbilt had Kelly asked for it [Piller Dep. 40:3-9].

The record is unclear as to the circumstances under which Kelly retrieved the Peterbilt truck from the Vrchota lot in lieu of the "staged" Landall vehicle. Giacobba testified simply that all Vrchota drivers had access to the locked parking lot where the Peterbilt was stowed [Giacobba Dep. 17], and Piller acknowledged that Kelly's license qualified him to drive it [Piller Dep. 39-49].

<strong>V. Analysis</strong>

<strong>A. General Rules of Insurance Policy Construction</strong>

The parties agree that Florida law controls the interpretation of the insurance policy at issue as well as all rights and duties arising from that policy.

Under Florida law, insurance contracts are to be interpreted in accordance with their plain meaning, *Swire Pacific Holdings, Inc. v Zurich Insurance Co.*, 845 So.2d 161 (Fla. 2003), with clauses affording coverage construed broadly to provide the greatest amount of coverage and exclusionary clauses which limit coverage interpreted narrowly. *Westmoreland v Lumbermans Mut. Cas. Co.*, 704 So.2d 176, 179 (Fla. 4th DCA 1997). If a policy provision is susceptible to more than one reasonable interpretation, it is considered ambiguous and must be construed liberally in favor of the insured and strictly against the insurer as drafter of the contract. *Swire*, 845 So.2d at 165, citing *Auto-Owners Ins. Co. v Anderson*, 756 So.2d 29, 34 (Fla. 2000)*; Flores v Allstate Ins. Co.*, 819 So.2d 740 (Fla. 2002).

However, the rule of liberal construction in favor of the insured applies only when a genuine inconsistency, uncertainty or ambiguity in meaning remains after resort to ordinary rules of construction. *Deni Associates of Florida, Inc. v State Farm Fire & Casualty Ins. Co.*, 711 So.2d 1135, 1140 (Fla. 1998). Where the policy language is clear, the court cannot indulge in construction, add meaning that is not present or otherwise reach results contrary to the intent of the parties. *Swire,* 845 So.2d at 165*,* quoting *State Farm Mut. Auto Ins. Co. v Pridgen,* 498 So.2d 1245, 1248 (Fla. 1986); *BMW of North America, Inc. v Krathen*, 471 So.2d 585 (Fla. 4th DCA 1985), *rev. den*., 484 So.2d 7 (Fla. 1986).

Although a policy is considered ambiguous when its language is susceptible to more than one reasonable interpretation, the lack of a definition of an operative term does not, by itself, create an ambiguity, *State Farm Fire & Cas. Co v CTC Development Corp*., 720 So.2d 1072 (Fla. 1998), nor does an ambiguity exist merely because a policy provision is complex and requires analysis for application. *Swire*, 845 So.2d at 165; *Koenigsberg v Intercontinental Ins.*

*Co.*, 571 So.2d 578 (Fla. 4th DCA 1990).

### 1. Duty to Defend

An insurer's duty to defend is determined solely by the allegations of the complaint against its insured, which must set forth facts which bring the case within the coverage of the policy. *Estate of Tinervin v Nationwide Mut. Ins. Co.*, 23 So.3d 1232, 1238 (Fla. 4th DCA 2009). The duty is triggered even if the facts of the underlying complaint only create potential coverage, *Grissom v Commercial Union Ins Co.,* 610 So.2d 1299 (Fla. 1st DCA 1992), *rev. den.*, 621 So.2d 1065 (Fla. 1993), and any doubt about the duty to defend must be resolved in favor of the insured.

Put another way, an insurance company's duty to defend its insured is generally determined from the allegations contained within the four corners of the complaint against its insured, not the "true facts" of the cause of action against the insured, the insured's version of the facts or the insured's defenses. *State Farm Fire & Cas. Co. v Steinberg*, 393 F.3d 1226 (11th Cir. 2004) (Fla. law).

However, a different rule may apply when the complaint on its face shows no coverage, but the insured notifies the insurer of facts that would potentially place the claim within the policy coverages. In this situation, it is commonly recognized that the insurer has an obligation to consider the insured's factual contentions, conduct a reasonable investigation into those facts and base its decision on "true facts." An insurer who fails to do so and refuses to defend will be liable for breach of the duty to defend if a reasonable investigation would have revealed a potential for coverage. *See Colonial Oil Industries, Inc. v Underwriters Subscribing to Policy Nos. TO31504670 and TO31504671*, 268 Ga. 561, 491 S.E.2d 337 (Ga. 1997), and authorities

cited *infra*, answer to certified question conformed to, *Colonial Oil Industries, Inc. v Underwriters Subscribing to Policy Nos. TO31504670 and TO31504671*, 133 F.3d 1404 (11th Cir. 1998). Although no Florida state cases directly address this issue, two sister district courts have similarly recognized that the allegations of the underlying complaint against the insured are not always conclusive, and that the "duty to defend may attach at some later stage in the litigation if the issues of the case are so changed or enlarged as to come within the policy coverage." *Weitz Co., LLC v Transportation Ins. Co.*, 2009 WL 1636125 (S.D. Fla. 2009), citing *Evanston Ins. Co v Royal American Construction Co. Inc.*, 2007 WL 4240749 * 1 (N.D. Fla. 2007).

### 2. Duty to Indemnify

An insurer's duty to defend is distinct from and broader than its duty to indemnify. Under Florida law, an insurer's duty to indemnify is determined by analyzing the policy coverages in light of the actual facts of the underlying case. Typically, evidence extrinsic to the pleadings is needed to evaluate the duty to indemnify. *Underwriters at Lloyds London v STD Enterprises, Inc.*, 395 F. Supp.2d 1142 (M.D. Fla. 2005); *Auto Owners Ins. Co. v Travelers Casualty & Surety Co.* 227 F. Supp.2d 1248 (M.D. Fla. 2002); *Pennsylvania Lumbermens Mutual Ins. Co. v Indiana Lumbermens Mutual Ins. Co.,* 43 So.3d 182 (Fla. 4th DCA 2010).

### C. Analysis

As set out above, the Policy provides coverage for "all sums an insured legally must pay as damages, other than punitive or exemplary damages, because of bodily injury ... caused by an accident and resulting from the ownership, maintenance or use of a covered auto." However, the Policy excludes coverage for "bodily injury to you or an insured." In this context, an "insured" is defined in relevant part to include "anyone ... while using with your permission a covered auto

you own, hire or borrow," e*xcept* where that person is "working in a business of selling, servicing, repairing, parking or storing auto (sic) unless that business is [the named insured's]."

Victoria argues that the evidence supports a finding that Michael Kelly was an omnibus "insured" within the meaning of the referenced exclusion because the evidence shows he was a permissive user of the Peterbuilt truck involved in the accident.  In support of this argument, Victoria  points to the underlying state court complaint, where the Personal Representative of the Estate of Kelly alleges that at all material times, Kelly operated the Peterbuilt truck at defendant Giacobba's request,  and that "the Decedent Michael Kelly had  the consent and permission of Vrchota and Giacobba to operate and utilize [the Peterbuilt truck]."

The  Estate of Kelly does not dispute that the underlying complaint contains these allegations.  However, it contends there is insufficient evidence in this summary judgment record to support a finding that  Kelly was a  "permissive user" of the Peterbilt and hence an  omnibus "insured" within the meaning of the cited exclusion.  In particular, it cites to the contrary deposition  testimony of Vrchota officers Kevin Piller and John Giacobba Jr., who flatly stated Kelly  did not have permission to use the Peterbilt truck on the day of the accident.  In addition, the Estate refers  to language in  the Policy declaration page which matches up each designated Vrchota driver with a specific truck in the Vrchota fleet, noting that the designation for Michael Kelly does not align him with the Peterbilt tow truck.

Alternatively, assuming *arguendo* that Kelly is found to be a  permissive user, the Estate of  Kelly argues that he nevertheless falls under an exception to the definition of an omnibus insured  as "someone using a covered auto while he ... (was) working in a business of ... parking or storing auto(s)," in a  business which was not that of  Vrchota's.  Here, the Estate contends

that Kelly's repossession assignment on the date of his death, involving the retrieval of a dump truck and motorcycle from Florida's west coast, necessarily involved the "parking or storing" of these vehicles within the meaning of this policy language.  Further, the Estate contends that this business was not that of Vrchota's, as Kelly secured the assignment from one of his own clients, "not Vrchota's clients" [Piller Dep. 14:8-14].

Viewing all the record evidence in conjunction with the allegations of the underlying wrongful death complaint, the court finds a genuine issue of material fact on the threshold "permissive use" question which precludes entry of summary judgment on the duty to defend or duty to indemnify issue.  The court recognizes that the "four corners" rule normally drives the duty to defend analysis, and that the underlying complaint in this particular case contains allegations of Kelly's permissive use of the Peterbilt truck.

However, where, as here, subsequent evidentiary developments in the litigation include statements from the named insured's own officers which flatly contradict the suggestion of Kelly's permissive use, the court finds the allegations of the underlying complaint are not conclusive.  Piller's deposition testimony raises a question on Kelly's status as a permissive user of the Peterbilt, particularly when viewed against the Policy declaration page which does not identify Kelly as the designated or listed driver of the Peterbilt truck.  Thus, there is some evidence casting doubt on Kelly's status as an omnibus insured within the meaning of the referenced exclusion, and hence there is some evidence which potentially brings the claim within the policy coverages.  As a result, it precludes entry of summary judgment in the context of this proceeding.

Finally, the court rejects Victoria's argument that Kelly's status as an omnibus insured may alternatively be sustained based on other evidence suggesting he enjoyed implied permission to use the Peterbilt truck. Here, Victoria notes simply that Kelly worked for Vrchota and in the context of that relationship had access to the locked parking lot where the Peterbilt truck was stored. Such evidence, standing alone, is insufficient to establish permissive use as a matter of law. The record reveals no evidence of Vrchota's protocol or regulations, formal or otherwise, governing vehicle assignments and limits of driver use, nor any evidence of Vrchota's customary practices in the context of its unique contractual relationship with Kelly.

On this record, Victoria has not carried its burden of showing the absence of a genuine issue of material fact on the question of Kelly's implied permission to use the Peterbilt vehicle. *See e.g. Evans v Shannon*, 201 Ill. 2d 424, 776 N.E.2d 1184 (Ill. 2002)(evidence insufficient to support finding that express or implied permission was granted by car dealer to independent contractor's employee to use vehicle, even though key to car was available to employees with access to the shop).

Because the summary judgment record does not unequivocally demonstrate that Kelly was operating the Peterbuilt with Vrchota's permission, express or implied, the court is unable to conclude as matter of law that Kelly falls within the definition of an omnibus "insured" under the subject Policy of insurance.[4] The "permissive user" issue shall accordingly be submitted to a jury.

---

[4] In light of this finding, it is unnecessary for the court to reach the Estate of Kelly's alternative argument that Kelly is excepted from the Policy definition of an omnibus insured at Section II.B.3(b) as a permissive user who was also a person engaged in the business of "storing and parking" autos in a business which was not that of Vrchota's.

## V. Conclusion

Based on the foregoing, the court finds that Victoria is not entitled to summary judgment on the sole claim for declaratory relief presented by the instant motion.

It is accordingly **ORDERED and ADJUDGED**:

The plaintiff's motion for summary judgment [DE# 31] is **DENIED.**

**DONE AND ORDERED** in Chambers this 6th day of April, 2011.

_____
Kenneth A. Marra
United States District Judge

cc.
All counsel